UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DWIGHT ANDRE WILLIAMS,

                        Plaintiff,

        -against-

URBAN PATHWAYS INC.,

                        Defendant.

20-CV-2007 (LLS)

ORDER OF DISMISSAL

LOUIS L. STANTON, United States District Judge:

        Plaintiff, appearing *pro se*, brings this action against Urban Pathways Inc., a social

service organization located in New York City, alleging housing discrimination. By order dated

April 15, 2020, the Court granted Plaintiff's request to proceed without prepayment of fees, that

is, *in forma pauperis*. For the reasons set forth below, the Court dismisses the complaint, with 30

days' leave to replead.

## STANDARD OF REVIEW

        The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint,

that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks

monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B);

*see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must

also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P.

12(h)(3).

        While the law mandates dismissal on any of these grounds, the court is obliged to

construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret

them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470

F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in

original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits –
to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil
Procedure, which requires a complaint to make a short and plain statement showing that the
pleader is entitled to relief.

The Supreme Court has held that under Rule 8, a complaint must include enough facts to
state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the
court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing
the complaint, the court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*,
556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the
elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at
555. After separating legal conclusions from well-pleaded factual allegations, the court must
determine whether those facts make it plausible – not merely possible – that the pleader is
entitled to relief. *Id.*

## BACKGROUND

Plaintiff, a former resident of the Ivan Shapiro House (ISH), a residence operated by
Urban Pathways Inc. (UP), alleges that from September 18, 2019, to November 21, 2019, ISH
staff and other residents mistreated him, and UP discharged him from its program because he is
black. Plaintiff also refers to other incidents that presumably occurred at other UP residences. He
seeks money damages.

The following facts are taken from the complaint: on September 18, 2019, UP Director of
Maintenance, Raphael Tapia, discriminated against Plaintiff in an unspecified manner. Then, on
November 7, 2019,

> Tapia felt it was okay to falsely have [Plaintiff] arrest[ed] by telling a lie to resident Thomas Garcia that I said something to him when I didn't. Thomas Garcia at that time ha[d] an order of protection and he was using him to set me up when another staff member employee say it did not happen.

(ECF No. 2, at 9.) In fact, Tapia had previously threatened Plaintiff. During the first incident, on November 16, 2017, Tapia "verbally threaten[ed] to do bodily harm" to Plaintiff. (*Id.* at 10.) And then two years later, on July 11, 2019, Tapia more forcefully threatened Plaintiff. After this incident, "OMH had a meeting [and] had [Tapia] remove[d] from the building, but they only transfer[red] him to a different" location. (*Id.* at 11.)

From 2015 to 2019, UP residents used racial slurs against Plaintiff, calling him the "'N word.'" (*Id.*) And, on an unspecified date, a director of operation refuse[d] to give additional 595 discharge for termination of occupancy agreement because she is a white female, but discharge me 'Dwight Williams" who is black, clearly show[s] . . . discrimination against people of color." (*Id.* at 13.)

Some of Plaintiff's claims concern residents' conduct, and their alleged threats against Plaintiff. (*See id.* at 15.) In addition to residents' threatening him, on June 18, 2018, at an undisclosed location, a UP maintenance worker, Johnny B, pulled a knife on him; when Plaintiff complained to UP staff and the Office of Mental Health (OMH) about this incident, nothing transpired.

Plaintiff's remaining allegations concern his informing UP staff that other residents sold narcotics from different UP residences, causing those residents, and their boyfriends, to threaten Plaintiff. After Plaintiff reported these incidents, UP staff failed to act.

## DISCUSSION

Because Plaintiff alleges that UP discriminated against him in his housing, the Court construes the complaint as asserting claims under the Fair Housing Act (FHA). The FHA

"broadly prohibits discrimination in housing . . . ." *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 93 (1979). Specifically, it prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status . . . national origin" or disability. 42 U.S.C.§ 3604(b), (f). The FHA also prohibits retaliation against persons who have asserted their rights under the FHA. *See id.* § 3617 (unlawful " to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [among others, §§ 3604 and 3605] of this title" ).

Plaintiff alleges that a director terminated his tenancy even though the director did not terminate the residency of a white female. But this allegation does not give rise to an inference that UP discriminated against Plaintiff because of his race. Rather, this allegation suggests only that one resident's tenancy was not terminated, but Plaintiff's tenancy was terminated. While Plaintiff does assert that this director considered Plaintiff's race when terminating his tenancy, Plaintiff does not assert any facts in support of this conclusion. Put simply, the complaint only suggests that one person, who happened to be a white female, did not have her tenancy terminated, while Plaintiff, who is a black male, did. Thus, Plaintiff fails to state a claim under the FHA against UP.

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because it is not clear that the defects in Plaintiff's complaint cannot be cured with an

amendment, the Court grants Plaintiff 30 days' leave to amend his complaint to assert facts in support of his assertion that UP terminated his residency based on his race.

## CONCLUSION

Plaintiff's complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), with 30 days' leave to amend.

A copy of this order is to be mailed in chambers.

SO ORDERED.

Dated:   April 21, 2020
         New York, New York

                                                _Louis L. Stanton_
                                                Louis L. Stanton
                                                U.S.D.J.